IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------
ROGER D. MARMET                           )
19 Quincy Street                          )
Chevy Chase, Maryland 20815,              )
                                          )
    AND                                   )
                                          )
ROGER D. MARMET FAMILY TRUST              )
c/o Roger D. Marmet, Trustee              )
19 Quincy Street                          )
Chevy Chase, Maryland 20815,              )
                                          )
                Plaintiffs,               )
v.                                        )
                                          )
                                          )
                                          )
ASGARD ENTERTAINMENT                      )
    GROUP, INC.,                          )   Civil Action No. _____
                                          )
SERVE: Its registered Agent               )
PRENTICE HALL CORP. SYSTEM                )
1090 VERMONT AVE., N.W.                   )
WASHINGTON, D.C. 20005                    )
                                          )
    AND                                   )
                                          )
CHANNELWORKSTV, LLC,                      )
                                          )
SERVE: Its Registered Agent               )
Michael F. Curtin                         )
1900 M St., N.W.                          )
Suite 600                                 )
Washington, DC 20036,                     )
                                          )
    AND                                   )
                                          )
BRIAN FRYDENLUND                          )
1401 Oakbrooke Ave                        )
Alexandria, Virginia 22308-1705           )
                                          )
    AND                                   )
                                          )
```

```
ERNEST G. CROW              )
27 Eton Overlook             )
Rockville, Maryland 20850   )
                             )
         Defendants.         )
```
----

## VERIFIED COMPLAINT

Plaintiffs Roger D. Marmet and Roger D. Marmet Family Trust, by their undersigned attorneys, allege, upon knowledge with respect to themselves and their own acts and upon information and belief with respect to all other matters as follows:

## INTRODUCTION

This is an action by Roger D. Marmet, individually ("Marmet"), and as the Trustee of the Roger D. Marmet Family Trust (the "Trust") against Asgard Entertainment Group, Inc. ("Asgard"); Brian Frydenlund, ("Frydenlund"), Asgard's Chief Executive Officer and Chief Financial Officer and the Chief Financial Officer of Wine Media Enterprises ("WME"); ChannelWorksTV, LLC ("CWTV"), a wholly owned subsidiary of Asgard, and Ernest G. Crow ("Crow"), Asgard's President, CWTV's President and the Chairman of the Board of Directors of WME, for damages arising from Defendants' intentional or reckless misrepresentations of material fact and violations of securities law relating to Plaintiffs' purchase of common shares of WME, Inc. In addition, Marmet also brings claims for certain unpaid wages and business expenses in violation of the District of Columbia Wage Act.

## PARTIES AND JURISDICTION

1. Plaintiff Roger D. Marmet is an individual over the age of twenty-one years (21) and a resident of the State of Maryland. His address is 19 Quincy Street, Chevy Chase, Maryland 20815.

2. Plaintiff Roger D. Marmet Family Trust is a duly established trust with Roger D. Marmet serving as Trustee. Its principal place of business is in Maryland.

3. Upon information and belief, Defendant Asgard is a company existing under and governed by the laws of the District of Columbia.

4. Defendant Asgard (dba TEAM) has a principal place of business at 4455 Connecticut Ave, N.W., # C-100 Washington, D.C. 20008. Defendant Asgard is engaged in the business of film, television and multi-media production.

5. Defendant CWTV is a limited liability company organized under the laws of the District of Columbia. It is a wholly owned subsidiary of Asgard.

6. CWTV's principal place of business is also 4455 Connecticut Ave, N.W., # C-100 Washington, D.C. 20008. CWTV is in the business of creating and developing new media content for the internet.

7. Defendant Frydenlund serves as Asgard's Chief Executive Officer and Chief Financial Officer and as WME's Chief Financial Officer and did so at all times relevant hereto. Upon information and belief, Frydenlund is a resident of the Commonwealth of Virginia and resides at 1401 Oakbrooke Ave, Alexandria, VA 22308-1705.

8. Defendant Crow is Asgard's President and previously served as CWTV's President and served in those capacities at all times relevant hereto. At all times relevant hereto, Crow served

as Chairman of WME's Board of Directors. Upon information and belief, Crow is a resident of the State of Maryland and resides at 27 Eton Overlook, Rockville, Maryland 20850.

9. This Court has jurisdiction over the subject matter of this case, pursuant to 28 U.S.C.A. §1331, because Plaintiffs allege one or more violations of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C.A. § 78j(b) (the "Exchange Act"), and/or SEC Rule. 10-b-5, 17 C.F.R. §240.10-b-5, promulgated thereunder.

10. Venue for this case is proper in this District because all or a substantial part of the events or omissions giving rise to the claims occurred in said District. Defendants maintain their principal office in this Judicial District.

## FACTUAL BACKGROUND
### The Employment Agreement

11. In or about January 2007, Plaintiff entered into an employment agreement with Defendants Asgard and CWTV. A copy of the offer letter to Marmet from the Asgard Human Resources Director, confirming the agreement is attached hereto as **Exhibit A** (the "January 16th Letter").

12. Pursuant to the parties' agreement, Marmet held the position of "Executive Vice President, CWTV". Defendants and Plaintiff agreed that Asgard would pay him salary of $180,000 per year.

13. At all times material to the allegations contained in this Complaint, Marmet was on Asgard's payroll.

14. Without authorization or prior notice, Defendant Asgard reduced the amount of Plaintiff's paycheck so that his salary was being paid at the rate of $ 90,000 per year. Defendant

4

Asgard, however, promised to pay Plaintiff the amounts withheld from his previously agreed salary.

15. Moreover, Defendant Asgard's paystubs for the paychecks, which were issued to Plaintiff after his salary was reduced, reflects the unpaid salary due and owing to Plaintiff. The owed amount was consistently noted on Plaintiff's paystubs as "Retro." A copy of one of said paystubs is attached hereto as **Exhibit B**.

16. The unpaid salary owed to Plaintiff totaled at least $38,076.94 in 2007. The unpaid salary owed to Plaintiff totaled at least $41,305.71 in 2008.

17. In addition to the unpaid salary, Defendants Asgard and CWTV also owe Plaintiff $20,311.18 for business expenses that he incurred in 2007 and 2008 on behalf of the Defendants.

18. Plaintiff has made repeated demands to Defendants for payment of both the unpaid salary and reimbursable expenses. See **Exhibit C** attached hereto. Despite Plaintiff's repeated requests to Asgard, however, both Defendants Asgard and CWTV have failed and refused to pay the unpaid salary and reimbursable expenses.

19. Additionally, Defendants' actions were done knowingly and deliberately and/or in reckless disregard of the harm said actions would cause Plaintiff.

## Wine Media Enterprises, Inc.

20. As part and parcel of his duties at CWTV, Marmet set out to establish and promote WME as a subsidiary of Asgard and CWTV.

21. On or about January 22, 2008, WME was established as a Delaware corporation. A primary purpose of WME was to host the WineTaste TV Internet television channel and to produce video programs about wine related subject matter. On or about May 1, 2008, Marmet was appointed the President of WME.

### The Subscription Agreements

22. From on or about December, 2007 until June 2, 2008, Frydenlund, Crow, and others working for Defendant Asgard, sought to persuade Marmet to make a substantial monetary investment in WME and to raise money for WME from other investors. Negotiations between Asgard and Marmet regarding his investment took place during this time frame.

23. On or about June 2, 2008, Marmet entered into a Subscription Agreement with WME which was signed on behalf of WME by Defendant Crow as Chairman of WME. Under the Subscription Agreement, Marmet purchased 345,000 common shares of WME for a price of $0.18 per share for a total price of $62,100. A copy of the Subscription Agreement is attached hereto as **Exhibit D** (the "Marmet Subscription Agreement").

24. On or about June 2, 2008, the Trust entered into a similarly worded Subscription Agreement with WME which was also signed on behalf of WME by Defendant Crow as Chairman of WME. Under this Subscription Agreement, the Trust purchased 75,000 common shares of WME for a price of $0.18 per share for a total price of $13,500. A copy of the Subscription Agreement is attached hereto as **Exhibit E** (the "Trust Subscription Agreement").

25. On or about June 2, 2008, CWTV also entered into a Subscription Agreement with WME. Under the Subscription Agreement, CWTV received majority stake in WME in the form of 630,000 common shares for a price of $0.18 per share which was based on the estimated value of past services provided to WME by CWTV and Asgard in the amount of $113,400. A copy of the Subscription Agreement is attached hereto as **Exhibit F** (the "CWTV Subscription Agreement").

26. Plaintiffs decided to purchase the shares of WME as a result of certain material representations made to Plaintiffs by Asgard, CWTV, Frydenlund and Crow which

6


representations were memorialized in the three (3) attached Subscription Agreements, documents titled "Business Overview", Excel Spreadsheets projecting expenditures by Defendants Asgard and CWTV in support of WME through March, 2009 and various emails from Defendants Frydenlund and Crow to Marmet.

27. In the Subscription Agreements, the following representations were made:

- "The parties agree that the use of funds received in consideration of the Company's shares will be limited to cover the Company's current and future out-of-pocket expenses, marketing and other developmental costs, none of these funds will be used to pay any past debt or invoices." (Section 5.1 of Marmet and Trust Subscription Agreements.)

- Defendant CWTV agrees to provide the following resources, services and support for the one year period starting March 1, 2008 and ending February 28, 2009 (the "Support Period")

    - Office space and related infrastructure (including: phones and phone service, computers and Internet access, copiers and office supplies);
    - Finance and administrative support;
    - Ongoing services of a Production Manager;
    - Ongoing engagement of a Company Senior Manager (the Chairman);
    - Ongoing employment of the Company President, roger Marmet, pursuant to the terms and conditions outlined in that certain Employment Agreement between Wine Media Enterprises, Inc. and Roger Marmet, a copy of which is attached hereto as Exhibit A and incorporated herein;
    - Ongoing use of an edit suite and editor;
    - Ongoing use as needed of a web-centric designer/programmer;
    - Ongoing use as needed of a senior web programmer;
    - Access to TEAM studio as needed (subject to scheduling)

(Section 4.1 of CWTV Subscription Agreement.)

28. In the Excel Spreadsheet (attached hereto as **Exhibit G**) which was prepared by Defendant Frydenlund and approved and endorsed by Defendant Crow and presented to Plaintiff Marmet to induce his investment, the expense line indicates that for the year 2008 Defendants

Asgard and CWTV would provide services (dba TEAM) to WME valued in the amount of $769,471.

29. In the WME Business Overview (attached hereto as **Exhibit H**) prepared and endorsed by Defendants Frydenlund and Crow, dated May 2008 and presented to Plaintiff Marmet to induce his investment in WME, the representation is made that Defendants Asgard and CWTV have "...contributed over $700,000 in cash and in-kind services in order to form key partnerships, develop content and design and launch the channel."

30. In addition, at various times during the first six months of 2008, prior to Plaintiffs making their investments in the WME shares, Frydenlund and Crow verbally affirmed these written representations to Marmet. For example, in March, 2008, Frydenlund told Marmet that he was committed to providing all the resources set forth in the spread sheet (i.e. in **Exhibit G**). In May, 2008, Crow specifically told Marmet him that none of the funds from Marmet's investment would be used to repay any prior expenditures by Asgard and CWTV on behalf of WME and that Asgard and CWTV would continue to provide services to WME at the same or greater level as had been provided in the past through March, 2009.

31. At the time the Defendants made the foregoing representations referenced in Paragraphs 26 through 30 above with the specific intention of inducing the Plaintiffs to purchase WME shares, they knew (and/or should have known) that due to the financial constraints of Asgard and CWTV, the foregoing statements were materially false when made. The Defendants intended for Plaintiffs to rely on the foregoing statements in making their investment in WME shares, they did so rely and that reliance was justified under the circumstances.

32. At the time the Plaintiffs' Subscription Agreement were signed, the Defendants never intended for the investment to be applied only to future costs as they had represented.

33. In fact, almost immediately after the Plaintiffs made their investments in the amount of $75,600, the majority of those proceeds were used to satisfy the past debts of Defendants' Asgard and CWTV.

34. Manifesting the fraudulent intent, within days of Plaintiffs' investments, Defendants Asgard, CWTV, Crow and Frydenlund reneged on the verbal and written assurances relative to levels of staffing and support for WME. Among other things, they reassigned and failed to provide ongoing services of a production manager and failed to provide or replace a web-centric designer/programmer, which positions were critical to WME's success and ability to attract other investors.

35. Similarly, Defendant CWTV in August, 2008 (just two (2) months after Plaintiffs' investment in WME shares), withdrew the provision of the required resources without giving the required two (2) months notice in breach of the provisions of the CWTV Subscription Agreement and the representations made to Plaintiffs.

36. Plaintiffs have made multiple demands on Defendants to return the investments made by Plaintiffs and to pay Marmet his unpaid salary and business expenses. To date, Defendants have failed to take those actions.

### COUNT I
### VIOLATION OF EXCHANGE ACT SECTION 10(B) AND RULE 10B-5 THEREUNDER
### (PLAINTIFFS AGAINST ALL DEFENDANTS)

37. Plaintiffs reallege and incorporate by reference paragraphs 1 – 36 above as if fully restated herein.

38. By reason of the forgoing, Defendants Asgard, Frydenlund, CWTV and Crow, by use of means or instrumentalities of interstate commerce and/or the mails, directly or indirectly, and acting intentionally in connection with the offer, sale or purchase of securities: (i) made untrue

statements of material fact and/or omitted to state material facts necessary to prevent other statements from being misleading; and (ii) engaged in acts, practices, or courses of business, which operated as a fraud on a person and (iii) obtained money by means of untrue statements of material facts and omission of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading all in violation of Exchange Act Section 10(b) and Exchange Act Rule 10b-5.

39. The Defendants made the material representations set forth in Paragraphs 26 through 30 above for the purpose of inducing Marmet and the Trust to purchase the WME shares, which shares are securities within the meaning of the Exchange Act.

40. At the time the Defendants induced Plaintiffs to purchase the WME shares, the Defendants knew, or should have known, that the material representations set forth in Paragraphs 26 through 30 above were untrue.

41. At the time that the Defendants induced the Plaintiffs to purchase the WME shares, Marmet and the Trust did not know, nor could they have known that the material representations set forth in Paragraphs 26 through 30 above were untrue.

42. As a direct and proximate result of Defendants' actions, omissions, and misrepresentations of material fact, Plaintiffs have suffered significant monetary injury.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants, jointly and severally, as follows:

    a) Compensatory damages in an amount to be proven at trial but no less than $125,000;

    b) Punitive damages as permitted by law;

    c) An award of attorneys' fees and the costs associated with this Complaint;

  d)  Pre-judgment and post-judgment interest; and

  e)  Such other and further relief as the Court deems just and appropriate.

### COUNT II
### BREACH OF FIBUCIARY DUTY
### PLAINTIFFS AGAINST CHANNELWORKS

43. Plaintiffs reallege and incorporate by reference paragraphs 1 – 42 above as if fully restated herein.

44. As the majority shareholder in WME, CWTV owed the Plaintiffs a fiduciary duty to act in the best interest of WME.

45. CWTV breached its fiduciary duty when within weeks of entering into the CWTV Subscription Agreement, it deliberately withdrew the level of staffing and support that WME required in order to survive and diverted those promised resources to the benefit of CWTV.

46. The actions of CWTV described herein constitute a violation of its fiduciary duties to its fellow shareholders, the Plaintiffs, for which Marmet and the Trust are entitled to receive damages. Plaintiffs made repeated demand upon CWTV and its officials to rectify the diversion but CWTV failed to correct the problem.

As a direct and proximate result of CWTV's actions and conduct, Plaintiffs have been damaged.

  WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendant CWTV as follows:

  a)  Compensatory damages in an amount to be proven at trial but no less than $300,000;

  b)  Punitive damages of $300,000 or as permitted by law;

  c)  An award of attorneys' fees and the costs associated with this Complaint;

  d)  Pre-judgment and post-judgment interest; and

e)      Such other and further relief as the Court deems just and appropriate.

## COUNT III
## VIOLATION OF D.C. WAGE ACT [D.C.§ 32-1301, ET SEQ.]
## (MARMET AGAINST ALL DEFENDANTS)

47.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 46 above as if fully restated herein.

48.     In 2007 and 2008, Plaintiff Marmet provided services for and earned a salary from Defendants Asgard and CWTV.

49.     Defendants Asgard and CWTV, without any authorization or justification, and despite repeated damage by Plaintiff, have failed to pay Plaintiff at least $79,382.65 in back salary owed for the years 2007 and 2008. Additionally, Defendants have failed to reimburse Plaintiff $20,311.18 in business expenses which remain due and owing to Plaintiff.

50.     These actions and omissions by Defendants Asgard and CWTV violate, inter alia, the D.C. Wage Act, D.C. §32-1301, et seq.

51.     Defendants Frydenlund, serving as Asgard's Chief Executive Officer and Chief Financial Officer, and Crow, serving as both CWTV's and Asgard's President, were fully aware of the Plaintiff's employment agreement and the back salary and expenses owed to Plaintiff and the demands therefore made by Plaintiff. Notwithstanding, they willfully and unlawfully withheld the unpaid back salary and unreimbursed business expenses from Plaintiff.

52.     Plaintiff has suffered monetary harm as a direct and proximate result of Defendants' willful and knowing failure to pay him his unpaid salary and reimbursable costs.

53.     Additionally, Defendants' actions were done knowingly and deliberately and/or in reckless disregard of the harm said actions would cause Plaintiff.

WHEREFORE, Plaintiff respectively requests that the court enter judgment against Defendants as follows:

a) Compensatory damages in an amount to be proven at trial but no less than $99,693.83;

b) Punitive damages as allowed by statute;

c) An award of attorneys' fees and the cost associated with this Complaint as allowed by statute;

d) Pre-judgment and post-judgment interest; and

e) Such other and further relief as the Court deems just and appropriate.

## COUNT IV
## UNJUST ENRICHMENT
## MARMET AGAINST DEFENDANTS ASGARD AND CHANNELWORKS

54. Plaintiff realleges and incorporates by reference paragraphs 1-53 above as if fully restated herein.

55. For nearly two (2) years, from the date of his employment until he was terminated, Plaintiff Marmet, among other things, performed valuable services to Defendants, conferred substantial monetary and other benefits upon Defendants Asgard and CWTV and paid expenses on behalf of both Defendants.

56. Defendants knowingly accepted the benefits conferred by Plaintiff in 2007 and 2008.

57. It would be wholly unfair and work a great injustice for Defendants to retain the benefits conferred at Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Asgard and CWTV as follows:

a) Compensatory damages in an amount to be proven at trial but no less than $275,000;

b) An award of attorneys' fees and all costs associated with this Complaint;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and appropriate.

## COUNT V
## QUANTUM MERUIT
## MARMET AGAINST DEFENDANTS ASGARD AND CHANNELWORKS

58. Plaintiff realleges and incorporates by reference paragraphs 1-57 above as if fully restated herein.

59. For nearly two years, from the date of his employment until he was terminated, Plaintiff Marmet among other things, performed valuable services to Defendants, conferred substantial monetary and other benefits upon Defendants Asgard and CWTV and paid expenses on behalf of both Defendants.

60. Defendants freely and knowingly accepted the benefits of Plaintiff's hard work and his payment of expenses on behalf of Defendants. Further, Defendants knew that Plaintiff expected to be paid at the rate previously agreed upon. They also intended him to rely on their promises, both stated and implied and Plaintiff did so rely on their actions and statements.

61. It would be wholly unfair and work a great injustice for Defendants to retain the benefits and fruit of Plaintiff's labor and his payment of business expenses on their behalf without fair compensation. Plaintiff is entitled to be paid for the reasonable value of his work and to be repaid for the business expenses which he incurred on behalf of Defendants.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants Asgard and CWTV as follows:

a) Compensatory damages in an amount to be proven at trial but no less than $275,000;

b) An award of attorneys' fees and the costs associated with this Complaint;

c) Pre-judgment and post-judgment interest; and

d) Such other and further relief as the Court deems just and appropriate.

**A JURY TRIAL ON ALL COUNTS IS HEREBY DEMANDED.**

Respectfully submitted,

*/s/ Mary M. Baker*

Haig V. Kalbian (D.C. Bar #400976)
Mary M. Baker (D.C. Bar #443104)
KALBIAN HAGERTY L.L.P.
888 17th Street, N.W., Suite 1000
Washington, D.C. 20006
202-223-5600 phone
202-223-6625 facsimile

Counsel for Plaintiffs

## VERIFICATION

IN THE DISTRICT OF COLUMBIA

Came before me the undersigned Notary Public, ROGER D. MARMET, who stated that the factual matters set forth in the foregoing Verified Complaint were true to the best of his knowledge, information and belief.

_____
Roger D. Marmet

Dated: 12/05/08

_____
Notary Public

My Commission Expires: 4/30/2013

Marale Garabetian
Notary Public, District of Columbia
My Commission Expires 4/30/2013

District of Columbia : SS
Subscribed and Sworn to before me
this 5th day of December, 2008

_____
Notary Public, D.C.
My commission expires 4/30/2013

16